McLuckie, Respondent, v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellant.

Equity Union Creameries, Inc., and another, Respondents, v. Same, Appellant.

*December 1, 1958—January 2, 1959.*

For the appellant there were briefs by *Bender, Trump, Davidson & Godfrey,* attorneys, and *Rodger S. Trump* of counsel, all of Milwaukee, and oral argument by *Rodger S. Trump.*

For the respondents there was a brief by *Edwards & Hafner* of La Crosse, and *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, and oral argument by *Roger W. Hafner* and *William J. Gleiss.*

BROWN, J. We must first deal with appellant's contention that there was no evidence to sustain the verdict of causal negligence on the part of the railroad and its employees. The first negligence found by the jury is that of failure in lookout.

The Diesel locomotive which pulled the train was occupied by three of the train crew. Among other duties, the engineer was charged with the duty to watch approaching traffic to the right of the track. To the left the fireman had a similar duty, and the brakeman sat in the center with no particular duty to look forward. The engineer controls the speed of the train and operates the brakes if needed.

It is undisputed that an automobilist, the witness Noel, driving from south to north, attempted to cross the tracks when the westbound freight cleared the intersection and actually got upon the eastbound tracks before he observed the approach of the eastbound train. Noel was able to stop in time and back off the tracks without being struck. Noel's approach to the track and his narrow escape attracted the entire attention of the engineer, fireman, and brakeman. No one looked to the north, the direction from which McLuckie approached. Appellant's counsel submits that this near-accident to Noel excuses the failure on the part of the fireman to keep watch in the sector assigned to him for lookout. The abandonment of his assigned duty is properly a matter which the jury may consider negligence of lookout and this evidence sustains the finding.

The jury may also conclude that an efficient lookout would reveal McLuckie's approach to the tracks so that the fireman might warn the engineer to apply the brakes. Calculations in evidence demonstrate that the trailer would have escaped if a reduction in the speed of the train had granted McLuckie two to three seconds more. The connection between negligence in lookout and the delayed application of the brakes presents a jury question under these circumstances upon causation of the collision.

Referring to the element of speed, appellant's counsel states that the public service commission has jurisdiction over the speed of the railroad trains. Sec. 192.29 (1), Stats. The commission has not set a limit for this particular highway crossing and passenger trains cross this intersection at a rate of 90 miles per hour and freight trains, such as this, regularly run here at 60 miles per hour. However, appellant concedes that under peculiar or unusual circumstances the railroad must conform its speed to standards of due care. The undisputed facts show that the view of the main-line tracks to the

west of the crossing is considerably obstructed when seen by observers on the north side of the crossing. Ten or 12 cars are customarily stored there on the three northerly sets of tracks and the depot and canopy also interfere with the view. We do not hold that such permanent or semipermanent obstructions may require high-speed trains to slow down in the absence of such orders by the public service commission, but these obstructions do present hazards. More important, in our view, is the fact that the long, slow freight, extending west of the crossing interfered with the spectator's view of the eastbound train when observed from the north side, McLuckie's side, of the tracks. The eastbound train did not come out from behind the westbound train until approximately 100 feet to the west of the crossing. By persons intending to cross, the bell and whistle of the eastbound train might well be attributed to the westbound train which had just passed.

The conductor of the westbound freight testified that he swung a red lantern out of the window of the caboose to warn automobile traffic on the north side of the tracks that the eastbound train was approaching. "I knew they [automobilists] were going to start coming as soon as we got over." The jury might infer that the eastbound engineer should anticipate similar traffic movement especially as the eastbound engineer testified that he turned on his whistle at the whistling post, about 1,400 feet west of the intersection and kept the whistle blowing from the whistling post to the crossing "because of the circumstances of the cars in front of me trying to get across. My speed was 55 miles per hour when I was one-half mile west of Tomah and continued at this same speed right up to the impact." Under the circumstances a jury question was presented of negligence in maintaining such speed.

A reduction of speed accomplishing three seconds of delay would have avoided the collision. The question of speed as a cause is for the jury.

The issues of causal negligence cannot be decided in appellant's favor as a matter of law.

Comparison of causal negligence must now be made. Appellant submits that McLuckie's negligence was as great or greater than that of the train crew. McLuckie was unfamiliar with this crossing. His view to the west was obstructed by the parked passenger coaches on track number three and by the railroad station and platform canopy just to the north of track number four. Further visual obstruction appeared by the long freight, westbound upon track number four which was between him and the train with which he collided on track number five. The bell and whistle of the eastbound freight could be attributed to the westbound one. The evidence supports the view that in sight and sound McLuckie was at a disadvantage by no fault of his own. There was evidence that the Griswold signals failed to operate at the crucial moment when McLuckie was beginning his progress across the tracks, and he was led to believe that the crossing was clear.

Experts for the Railroad Company testified, and counsel urged, that the Griswold signals are automatic devices which just *have* to work; also a momentary failure, to which plaintiffs' eyewitnesses testified, is impossible. Appellant submits that the physical facts in the operation of such signals overcomes any contrary testimony depending upon the mere observation of witnesses.

The railroad testified that it employs inspectors and servicemen to prevent failures. Such employees would be unnecessary if these devices could never misbehave. Jurymen now are acquainted with electrical and mechanical automatic

devices in their homes and business pursuits. They know that such mechanisms in automobiles, household appliances, and even water closets work imperfectly. It is common knowledge. We cannot hold as a matter of law that impartial eyewitnesses must be mistaken when they say they saw this machine cease to function.

There is credible evidence here which the jury may consider to reduce the negligence in McLuckie's failure in discovering the train in time for him to stop. Comparison of negligence here, as in most cases, is a jury question.

We conclude that we may not dismiss the actions of the respective plaintiffs as matters of law and since the verdicts in favor of the plaintiffs are defective no judgment for them can be granted. There must be a new trial, as the orders of the trial court determined.

*By the Court.*—Orders affirmed.